UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TIMOTHY RAY K.,[1] | |
| Petitioner, | Case No. 4:21-CV-00178-DKG |
| v. | **MEMORANDUM DECISION AND ORDER** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Respondent. | |

# INTRODUCTION

Pending before the Court for consideration is Timothy Ray K.'s Petition for Review of the Respondent's denial of social security benefits, filed on April 23, 2021. (Dkt. 1). The Court has reviewed the Petition for Review, the parties' memoranda, and the administrative record ("AR"). For the reasons that follow, the Court will affirm the final decision of the Commissioner of Social Security ("Commissioner").

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

**MEMORANDUM DECISION AND ORDER – 1**

# BACKGROUND

On September 6, 2018, Petitioner protectively filed an application for Title II Disability Insurance Benefits for a period of disability beginning June 1, 2018, based upon physical impairments including breathing problems, back pain, joint pain, inability to walk, inability to sit or stand for prolonged periods, sarcoidosis, and carpal tunnel issues. (AR 170, 187). His claim was initially denied on January 11, 2019, (AR 75), and again upon reconsideration on April 10, 2019, (AR 93).

On March 19, 2020, a hearing was held before Administrative Law Judge ("ALJ"), Wynne O'Brien-Persons. (AR 30-48). After considering testimony from Petitioner and a vocational expert, ALJ O'Brien-Persons issued a decision on April 28, 2020, finding Petitioner was not disabled. (AR 12-25).

Petitioner requested review by the Social Security Appeals Council, which denied his request for review on February 18, 2021, making the ALJ's decision the final decision of the Commissioner. (AR 1-6). Petitioner timely appealed this final decision on April 23, 2021. (Dkt. 1).

The Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). Petitioner was thirty-eight years of age at the time of the alleged disability onset. (AR 24, 50). Petitioner has a college education and reported past relevant work as a computer-assisted design technician. (AR 44, 188-89).

**MEMORANDUM DECISION AND ORDER – 2**

## THE ALJ'S DECISION[2]

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ determined Petitioner had not engaged in substantial gainful activity since the alleged onset date, June 1, 2018. (AR 17). At step two, the ALJ found Petitioner had the following severe impairments: sarcoidosis, obesity, osteoarthritis of the right dominant hand and knees, B12 deficiency, lumbar degenerative disc disease, cervical degenerative disc disease with right-sided radiculopathy, and obstructive sleep apnea. (AR 18). At step three, the ALJ determines whether a claimant's impairment or

---

[2] *Kennedy v. Colvin*, 738 F.3d 1172 (9th Cir. 2013), sets forth the five-step review process as follows:
> The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in 'substantial gainful activity' and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id*. § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id*. If the process continues beyond the third step, the fourth and fifth steps consider the claimant's 'residual functional capacity' in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id*. § 416.920(a)(4)(iv)-(v).

738 F.3d at 1175.

**MEMORANDUM DECISION AND ORDER – 3**

combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Appendix 1"). 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. Here, the ALJ determined that Petitioner did not have an impairment or combination of impairments that met or were medically equal to the criteria of Listings 1.02 or 1.04. (AR 18-19).

At step four, the ALJ determined Petitioner retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following additional limitations:

> Frequent balancing, occasional all other postural, frequent reaching with right upper extremity in all directions (dominant), frequent handling and fingering with right upper extremity, avoid concentrated exposure to cold and vibration, avoid moderate exposure to wetness, humidity and pulmonary irritants, avoid all hazards, and alternate positions as needed while staying on task.

(AR 19). In reliance upon testimony from the vocational expert ("VE"), the ALJ found that Petitioner was unable to perform past relevant work as a computer-aided design technician. (AR 23). However, the ALJ found that Petitioner could still perform work as a parking lot attendant, bottling line attendant, and school bus monitor. (AR 24). Accordingly, the ALJ found Petitioner not disabled. (AR 25).

## ISSUE FOR REVIEW

The following issues are raised on appeal:

1. Whether the ALJ properly evaluated the medical opinion evidence.

2. Whether the ALJ properly evaluated Petitioner's RFC assessment.

**MEMORANDUM DECISION AND ORDER – 4**

## STANDARD OF REVIEW

On review, the Court is instructed to uphold the final decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

In making its determination, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that does not support the ALJ's conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The Court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court considers only the reasoning and actual findings identified by the ALJ and may not affirm for a different reason or based on post hoc rationalizations attempting to infer what the ALJ may have concluded. *Garrison*, 759 F.3d at 1010; *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports Petitioner's

**MEMORANDUM DECISION AND ORDER – 5**

claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

## DISCUSSION

### 1. Medical Opinion Evidence

Petitioner asserts the ALJ's determination is unsupported by substantial evidence because she failed to properly evaluate the medical opinions of record. (Dkt. 18 at 11-15).

#### a. Legal Standard

New regulations governing an ALJ's evaluation of medical opinion evidence apply to claims filed on or after March 27, 2017. *See* Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. Under the new regulations, the ALJ is no longer required to give deference to any medical opinion, including treating source opinions. *Id.*; *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Instead, the ALJ evaluates the persuasiveness of the opinions based on several factors. 20 C.F.R. § 404.1520c(a). These are: supportability, consistency, relationship to the claimant, specialization, and other factors. 20 C.F.R.

**MEMORANDUM DECISION AND ORDER – 6**

§ 404.1520c(c)(1)-(5). The most important factors in this evaluation process are supportability and consistency.[3] 20 C.F.R. § 404.1520c(b)(2).

"Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.'" *Woods*, 32 F.4th at 791-792 (quoting 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent ... with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* (quoting 20 C.F.R. § 404.1520c(c)(2)).

Under this framework, the ALJ is required to articulate how persuasive they find the evidence and explain how supportability and consistency were considered. 20 C.F.R § 404.1520c(b)(2). The ALJ may, but is not required to, explain how the other secondary factors were considered, unless he or she finds that two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same." 20 C.F.R. § 404.1520c(b)(3). The ALJ's persuasiveness determination under the revised regulations must be supported by substantial evidence. *See Woods*, 32 F.4th at 787 ("Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence.").

---

[3] "Supportability" is defined as: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "Consistency" is defined as: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

**MEMORANDUM DECISION AND ORDER – 7**

### b. Medical Opinions

#### i. Dr. Coolidge

State Agency Medical Consultant Thomas T. Coolidge, M.D., conducted a review of Petitioner's medical file and found Petitioner is "limited to a light RFC with freq[uent] reaching on the right and freq[uent] [handling and fingering] bilat[erally]." (AR 65).

As to Petitioner's physical residual functional capacity assessment, Dr. Coolidge found Petitioner could occasionally lift and/or carry 20 lbs., frequently lift and/or carry 10 lbs., stand and/or walk (with normal breaks) for a total of six (6) hours in an eight (8) hour workday; and sit (with normal breaks) for six (6) hours in an eight (8) hour workday. (AR 67). Further, Dr. Coolidge found Petitioner could occasionally climb ramps, stairs, ladders, ropes, and/or scaffolds; that he could occasionally stoop, kneel, crouch, and crawl; and that he could frequently balance. (AR 68).

Concerning Petitioner's manipulative limitations, Dr. Coolidge found that Petitioner was limited to frequent reaching on the right and frequent handling and fingering bilaterally. (AR 68).

Dr. Coolidge also noted that "[e]nvironmental precautions [were] warranted for sarcoidosis [symptoms]." (AR 65). Specifically, Dr. Coolidge opined that Petitioner must avoid concentrated exposure to extreme cold and vibration; avoid even moderate exposure to wetness, humidity, fumes, odors, dusts, gasses, and poor ventilation; and avoid all exposure to hazards (machinery, heights, etc.). (AR 69).

**MEMORANDUM DECISION AND ORDER – 8**

### ii. Dr. Heckard

Consultative examiner Ralph Heckard, M.D. saw Petitioner for a physical examination and determined that Petitioner was

> limit[ed] to some degree in his capacity and maximum tolerance for engaging in prolonged sitting or standing; continuous uninterrupted ambulation; repeated or sustained bending with heavier lifting and carrying; frequent squatting, stooping, crouching, kneeling or crawling; heavier overhead or forward reaching physical activities with the right upper extremity; or repetitive heavier gripping or twisting or pushing or pulling or handling duties with the hands.

(AR 326-27).

### iii. Dr. Vestal

State Agency Medical Consultant Robert Vestal, M.D. opined that Petitioner "has RFC for light exertion with postural, manipulative, and environmental limitations." (AR 57). Specifically, as to Petitioner's postural limitations, Dr. Vestal opined that based upon his sarcoidosis, obesity, and complaints of pain and fatigue, Petitioner could frequently balance and occasionally climb ramps or stairs, stoop, kneel, and crouch; but he could never climb ladders, ropes, or scaffolds or crawl. (AR 55).

As to Petitioner's manipulative limitations, Dr. Vestal opined that Petitioner was limited in his ability to reach left in front and/or laterally, right in front and/or laterally, left overhead, and right overhead; that he was limited in handling and fingering bilaterally; and that he was unlimited in feeling. Additionally, Dr. Vestal opined that Petitioner should "avoid more than frequent reaching in planes and directs" and "should avoid more than occasional handling and fingering bilaterally" due to his joint pain and fatigue complaints. (AR 55-56).

**MEMORANDUM DECISION AND ORDER – 9**

Finally, as to Petitioner's environmental limitations, Dr. Vestal opined that Petitioner should avoid concentrated exposure to extreme cold and vibration due to his joint pains; that he should avoid all exposure to wetness, humidity, fumes, odors, dusts, gases, and poor ventilation due to his sarcoidosis; and that he should avoid all exposure to unprotected heights and unguarded machinery due to his obesity. (AR 56).

### c. The ALJ's Decision

The ALJ found Dr. Coolidge's opinion persuasive. Specifically, the ALJ found it was "supported with facts pertaining to [Petitioner's] physical impairments and symptoms cited within the assessment" and "consistent with the medical record," which revealed that Petitioner had "effusion, tenderness, and pain with range of motion and decreased range of motion." (AR 23) (citing AR 265-66, 337).

The ALJ also found Dr. Heckard's opinion persuasive. Specifically, the ALJ found it was supported by his in-person examination, which revealed that Petitioner's right shoulder had mild anterior cuff palpation tenderness, and that it was consistent with the medical record, which revealed that Petitioner had "effusion, tenderness, and pain with range of motion and decreased range of motion." (AR 23) (citing AR 265-66, 324, 337).

However, the ALJ ultimately found Dr. Vestal's opinion not persuasive. AR 23. While the ALJ noted that Dr. Vestal's opinion was "supported with facts pertaining to [Petitioner's] physical impairments and symptoms cited within the assessment," the ALJ found this opinion "not consistent with the medical record," specifically noting that while Petitioner "had effusion, tenderness, and pain with range of motion, and decreased range of motion," his "fine and gross movements were equal bilaterally"; his "lungs were noted

as clear to auscultation"; he had "full range of motion in his neck"; his "gait was noted as steady and his balance was intact"; and he had "5/5 strength bilaterally." (AR 23) (citing AR 265-66, 332, 335, 337, 347, 350, 360).

### d. Analysis

Petitioner asserts that the ALJ erred in her analysis of Dr. Coolidge's opinion by failing to incorporate Dr. Coolidge's bilateral handling and fingering limitations into her RFC assessment. (Dkt. 18 at 12). Specifically, Petitioner asserts that although Dr. Coolidge opined that Petitioner would be limited to frequent handling and fingering bilaterally, the RFC only mentions limitations for the right upper extremity. (AR 19) (limiting Petitioner to "frequent handling and fingering with right upper extremity").

While the ALJ clearly discussed the persuasiveness factors of supportability and consistency as required under the regulations, the Court finds that the ALJ committed error in failing to incorporate the bilateral restrictions identified by Dr. Coolidge in her RFC assessment. *See* SSR 96-8p ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). Because the ALJ provided no discussion of why she did not adopt Dr. Coolidge's finding that Petitioner's handling and fingering limitations applied bilaterally, and yet found Dr. Coolidge's opinion persuasive, the ALJ erred.

Such error may be harmless, however, where it is "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115. Respondent asserts that any error is harmless because it would not change the ALJ's ultimate nondisability determination based upon the occupations identified by the vocational expert ("VE"), each of which

**MEMORANDUM DECISION AND ORDER – 11**

requires no more than frequent bilateral handling or fingering. (Dkt. 22 at 6). The Court agrees.

As Respondent aptly notes, while the ALJ's hypothetical limited Petitioner to right-sided handling and fingering, the Dictionary of Occupational Titles ("DOT") does not distinguish between dominant-hand handling and fingering and bilateral handling and fingering. (Dkt. 22 at 6) (citing 1991 WL 687971 (bottling line attendant); 1991 WL 687-865 (parking lot attendant); and 1991 WL 673102 (school bus monitor)). Thus, even if the ALJ would have properly accounted for Dr. Coolidge's bilateral restrictions in her hypotheticals to the VE, Petitioner would still be able to perform the exemplary occupations identified by the VE, particularly where Petitioner had equal bilateral strength, where none of the occupations identified by the VE require more than frequent bilateral handling or fingering, and where Petitioner is right-hand dominant. (*Id.*). As such, the Court finds that the ALJ's error was harmless.

Next, Petitioner asserts that the ALJ improperly disregarded Dr. Heckard's opinion that Petitioner was limited in his capacity for prolonged sitting, standing and walking, as well as his opinion that Petitioner had bilateral manipulative limitations. (Dkt. 18 at 13).

The Court finds little merit to this argument. The ALJ clearly discussed the persuasiveness factors of supportability and consistency when evaluating Dr. Heckard's opinion, (AR 23), and found Dr. Heckard's opinion persuasive. Substantial evidence supports her finding. Additionally, the ALJ specifically incorporated Dr. Heckard's opinion regarding Petitioner's postural limitations into her RFC assessment. (AR 19)

**MEMORANDUM DECISION AND ORDER – 12**

(Petitioner "has the residual functional capacity to perform light work … and alternate positions as needed while staying on task"). While the ALJ did err in failing to include the bilateral limitations noted by Dr. Heckard in her RFC assessment, for the same reasons identified above with respect to Dr. Coolidge's opinion, such error was harmless because it was "inconsequential to the ultimate nondisability determination." *Molina* 674 F.3d at 1115.

Finally, Petitioner asserts that the ALJ's reasons for rejecting Dr. Vestal's opinion consists of a "mere recitation of seemingly unrelated findings" and does not support the ALJ's finding that "Dr. Vestal's opinion regarding bilateral manipulative limitations is in any way inconsistent with the record." (Dkt. 18 at 14).

The Court finds some merit to Petitioner's argument. While the ALJ did discuss the persuasiveness factors of supportability and consistency as required under the regulations, some of the evidence to which the ALJ cites does not adequately support her reasoning.

On the one hand, substantial evidence supports the ALJ's inconsistency finding as to Dr. Vestal's opinion with respect to Petitioner's environmental limitations. Specifically, while the medical records indicated that Petitioner's lungs were noted as clear to auscultation, (AR 347, 350), Dr. Vestal opined that Petitioner should avoid *all* exposure to wetness, humidity, and pulmonary irritants as well as hazards.

On the other hand, however, substantial evidence does not support the ALJ's inconsistency finding as to the remainder of Dr. Vestal's opinion pertaining to Petitioner's manipulative limitations.

**MEMORANDUM DECISION AND ORDER – 13**

First, the ALJ again failed to incorporate the bilateral limitations noted by Dr. Vestal in her RFC assessment as well. As above, however, the Court finds such error to be harmless. *Molina* 674 F.3d at 1115.

And second, the medical records indicating that Petitioner's "fine and gross movements were equal bilaterally"; that Petitioner had "full range of motion in neck"; that Petitioner's "gait was steady and balance intact"; and that Petitioner had "5/5 strength bilaterally" do not contradict the manipulative limitations imposed by Dr. Vestal—specifically, that Petitioner should "avoid more than occasional handling and fingering bilaterally." (AR 56). Given that Dr. Vestal's opinion as to Petitioner's manipulative limitations was the only other portion of his opinion that was actually inconsistent with the other medical source opinions (Drs. Coolidge and Heckard determined Petitioner could maintain frequent handling and fingering), and given that substantial evidence does not support the ALJ's reasons for disregarding this portion of Dr. Vestal's opinion, the Court finds the ALJ erred in rejecting Dr. Vestal's opinion on this basis.

The Court finds, however, that this error, too, was "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115. As Respondent correctly notes, even if the ALJ had credited Dr. Vestal's opinion limiting Petitioner to occasional bilateral handling and fingering, such a limitation would not have precluded all employment. Here, both Dr. Coolidge and Dr. Vestal opined that Petitioner was capable of performing light work, (AR 57, 65), and the VE testified that there was at least one occupation at the light exertional level that, in addition to Petitioner's other postural,

manipulative, and environmental limitations, would allow for occasional handling and fingering, (AR 45-46). In particular, the VE identified the occupation of school bus monitor, for which there are 141,000 jobs in the national economy. (AR 45-46). While Petitioner asserts that the VE testified that all work would be precluded if Petitioner were limited to occasional handling and fingering, even with just one of his hands, (Dkt. 18 at 15), this is an incorrect summarization of the VE's testimony, as the testimony to which Petitioner refers pertains to sedentary work, rather than light work, (AR 47).

Because the two state agency medical consultants opined that Petitioner was able to perform light work—not sedentary work—with additional postural, manipulative, and environmental limitations, the Court finds that even if the ALJ properly incorporated Dr. Vestal's findings limiting Petitioner to occasional bilateral handling and fingering, it would not affect the ultimate nondisability determination in this case. Additionally, even though the ALJ erred in disregarding portions of Dr. Vestal's medical opinion, the Court finds such error was harmless where the VE identified at least one occupation that exists in "significant numbers in the national economy" that Petitioner could perform. *See Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 527-29 (9th Cir. 2014) (finding 25,000 jobs nationally to be a significant number of jobs). [4]

---

[4] In his Reply, Petitioner relies upon *Maxwell v. Saul*, 971 F.3d 1128 (9th Cir. 2020), for the proposition that "one occupational prospect is insufficient to sustain a finding that Plaintiff is not disabled." (Dkt. 24 at 9). *Maxwell*, however, interpreted a rule applying only to "individuals of advanced age"—that is, individuals fifty-five years of age or older. Here, because Petitioner was thirty-eight years of age at the time of the alleged disability onset, *Maxwell* is inapposite. *See Joshua L. W. v. Kijakazi*, No. 4:20-CV-00458-CWD, 2022 WL 910304, at *9 (D. Idaho Mar. 29, 2022).

**MEMORANDUM DECISION AND ORDER – 15**

To the extent the evidence could be interpreted differently, or there are conflicts or ambiguities in the evidence, those matters are resolved by the ALJ. *Morgan*, 169 F.3d at 599-600. The Court must uphold the ALJ's conclusion where, as here, the evidence may be subject to more than one rational interpretation and the ALJ's decision is supported by substantial evidence. *Burch*, 400 F.3d at 679.

Accordingly, the Court will affirm the ALJ's decision as to the medical opinion evidence.

## 2. RFC Assessment

Petitioner asserts that the ALJ erred by failing to assess his RFC on a function-by-function basis regarding his capacity for standing, sitting, or walking. (Dkt. 18 at 8-9). Specifically, Petitioner asserts that the ALJ's failure to provide a function-by-function assessment "leaves it unclear how she reconciled [Petitioner's] inability to sit or stand for prolong periods," as detailed in Dr. Heckard's opinion, "with a finding that [Petitioner] could perform [light] work which requires such an ability." (Dkt. 18 at 11). Petitioner also asserts that because 20 C.F.R. § 404.1567(b) makes clear that Petitioner must have the ability to either stand and walk for prolonged periods, or sit for prolonged periods, if not both, to be capable of light work, the ALJ erred in failing to articulate Petitioner's specific capacity for sitting, standing, or walking. (Dkt. 24 at 3-4).

A claimant's RFC is a function-by-function assessment of his or her ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. 20 C.F.R. § 404.1545; SSR 96–8p. It is, in laymen's terms, "the most [the claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a). The

**MEMORANDUM DECISION AND ORDER – 16**

RFC is comprised of a claimant's physical abilities, mental abilities and applicable impairments, *id.*, and it is divided into five exertional categories: (1) sedentary, (2) light, (3) medium, (4) heavy, and (5) very heavy. 20 C.F.R. § 404.1567. In determining a claimant's RFC, the ALJ "must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (citation omitted).

Social Security Regulations require that an ALJ provide a "narrative discussion describing how the evidence supports" his or her RFC conclusion. SSR 96–8p, 1996 WL 374184 at *7. The ALJ must discuss "the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week ...)." *Id.*

Here, the ALJ determined Petitioner retained the ability to perform light work as defined in 20 C.F.R. § 404.1567(b) and clarified that he had the capacity to "alternate positions as needed while staying on task." (AR 19). In reaching this determination, the ALJ engaged in a "narrative discussion" of each of the strength demands, including sitting, standing, and walking. (AR 19-22). Based upon a thorough review of the record, the Court finds that the ALJ did not fail to engage in a function-by-function assessment of Petitioner's capacity for sitting, standing, and walking, and that substantial evidence supports her finding.

The Court also finds unavailing Petitioner's argument that the RFC assessment is irreconcilable with Dr. Heckard's opinion. As discussed at length above, the ALJ

**MEMORANDUM DECISION AND ORDER – 17**

appropriately adopted the opinion of Dr. Heckard, which found that Petitioner is "limit[ed] to some degree in his capacity and maximum tolerance for engaging in prolonged sitting or standing [and] continuous uninterrupted ambulation." The ALJ's determination that Petitioner should "alternate positions as needed while staying on task" is simply not at odds with Dr. Heckard's opinion.

Furthermore, while Petitioner asserts that he is incapable of performing light work because he is unable to engage in the prolonged standing, sitting, or walking required, SSR 83-12 specifically accounts for "cases of unusual limitation of ability to sit or stand." *See* SSR 83-12 ("In cases of unusual limitation of ability to sit or stand, a [VE] should be consulted to clarify the implications for the occupational base."). Indeed, where Petitioner is incapable of "doing either the prolonged sitting contemplated in the definition of sedentary work … or the prolonged standing or walking contemplated for most light work," the ALJ must consult a VE. *Id.*; *Polley v. Comm'r of Soc. Sec. Admin.*, 173 F.3d 861 (9th Cir. 1999) ("SSR 83-12 … explains that a claimant who must have the freedom to alternate sitting and standing 'is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work ... or the prolonged standing or walking contemplated for most light work.' SSR 83-12 does not say that a sit or stand option is inconsistent with all light work. Instead, it recommends that, where there is 'an unusual limitation of ability to sit and stand,' a vocational specialist be consulted 'to clarify the implications for the occupational base.'" (quoting SSR 83-12)); *see also Aukland v. Massanari*, 257 F.3d 1033, 1036 (9th Cir. 2001) ("[T]he Commissioner has ruled that in circumstances such as Aukland's, where a claimant is

**MEMORANDUM DECISION AND ORDER – 18**

only qualified for unskilled jobs and is unable to sit for prolonged periods, the services of a vocational expert are required." (citing SSR 83-12)). The ALJ clearly satisfied that requirement in this case.

Based upon a thorough review of the record, the Court finds the ALJ's decision was supported by substantial evidence and free from harmful legal error. *See Bray v. Commissioner*, 554 F.3d 1219, 1222 (9th Cir. 2009). To the extent the evidence could be interpreted differently, or there are conflicts or ambiguity in the evidence, those matters are resolved by the ALJ. *Morgan.*, 169 F.3d at 599-600. The Court must uphold the ALJ's conclusion where, as here, the evidence may be subject to more than one rational interpretation, and the ALJ's decision is supported by substantial evidence. *Burch*, 400 F.3d at 679.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) The Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED**.

2) The Petition for Review (Dkt. 1) is **DISMISSED**.

DATED: October 24, 2022

_____
Honorable Debora K. Grasham
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER – 19**